# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| JOSEPH B.,[1] | Case No. 2:23-cv-750-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **MARTIN O'MALLEY,** Commissioner of Social Security, | |
| Defendant. | |

D. James Tree, TREE LAW OFFICE, 3711 Englewood Avenue, Yakima, Washington 98902; and Ari D. Halpern, HALPERN LAW GROUP, PC, 62910 O.B. Riley Road, Suite 100, Bend, OR 97703. Of Attorneys for Plaintiff.

Natalie K. Wight, United States Attorney, and Kevin Danielson, Civil Division Chief, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; and Jennifer C. Forsyth, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Opinion and Order uses the same designation for a non-governmental party's immediate family member.

Plaintiff Joseph B. seeks judicial review of the final decision of the Commissioner of the Social Security Administration (Commissioner) denying his application for Supplemental Security Income (SSI) under the Social Security Act (Act). For the reasons below, the Court reverses the decision of the administrative law judge (ALJ) and remands for further proceedings.

## STANDARD OF REVIEW

The decision of the ALJ is the final decision of the Commissioner in this case. The district court must affirm the ALJ's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla," and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1150 (2019) (internal quotation marks omitted).

When the evidence is susceptible to more than one rational interpretation, the Court must uphold the ALJ's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the ALJ's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the ALJ. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the ALJ on a ground upon which the ALJ did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A.  Plaintiff's Application

Plaintiff applied for SSI on December 19, 2019, alleging a disability onset date of December 31, 2019. AR 21. Plaintiff's date of birth is January 14, 1979, making him 42 years old on his alleged disability onset date. AR 72. Plaintiff alleged that he is unable to work due to sleep apnea, respiratory infections, reactive hypoglycemia - blood sugar, memory loss, joint pain and immobility, fatigue, and concentration problems. AR 267.

The agency denied Plaintiff's claim both initially and upon reconsideration, and Plaintiff requested a hearing. AR 71, 88, 121. Plaintiff and his attorney representative appeared before an ALJ for a telephonic hearing on April 5, 2022. AR 13, 29. The ALJ issued a decision denying Plaintiff's claim for benefits on April 14, 2022. AR 13-22. Plaintiff requested a review of the ALJ's decision, AR 232, which the Appeals Council denied. AR 1-6. The ALJ's decision thus became the final decision of the Commissioner and Plaintiff timely appealed pursuant to 42 U.S.C § 405(g).

### B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are:

> (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there

> significant numbers of jobs in the national economy that the
> claimant can perform?

*Keyser*, 648 F.3d at 724-25. Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4),

416.920(a)(4). If the analysis continues beyond step three, the ALJ must evaluate medical and

other relevant evidence to assess and determine the claimant's "residual functional capacity"

(RFC).

The claimant bears the burden of proof at steps one through four. *Bustamante v.*

*Massanari*, 262 F.3d 949, 953 (9th Cir. 2001); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098

(9th Cir. 1999). The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d

at 1100. At step five, the Commissioner must show that the claimant can perform other work that

exists in significant numbers in the national economy, "taking into consideration the claimant's

residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R.

§§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the

Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform

other work existing in significant numbers in the national economy, the claimant is not disabled.

*Tackett*, 180 F.3d at 1099; *see Bustamante*, 262 F.3d at 954.

**C.  The ALJ's Decision**

At step one of the sequential analysis the ALJ determined that Plaintiff had not engaged

in substantial gainful activity since December 19, 2019. AR 15. At step two, the ALJ found the

following severe, medically determinable impairments: chronic sinusitis, morbid obesity,

obstructive sleep apnea, joint pain, and non-alcoholic fatty liver disease. *Id.* At step three, the

ALJ determined that Plaintiff does not have an impairment or combination of impairments that

meets or medically equals the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P.

Appendix 1. AR 16-17. The ALJ then found that Plaintiff has the RFC to perform a range of light work, with the following limitations:

> [H]e could stand and/or walk up to two hours and sit up to six hours total in an eight-hour workday; he could stand and/or walk up to 10 minutes at a time; he should avoid crawling and climbing ladders, ropes, and scaffolds; he could occasionally stoop, kneel, crouch, and climb ramps and stairs; he would need to avoid all exposure to unprotected heights, moving mechanical parts, and hazards; he should avoid even moderate exposure to airborne particulates (e.g., dusts, fumes, etc.); and he should avoid concentrated exposure to extreme temperatures and excessive vibration.

AR 17.

At step four, the ALJ found Plaintiff unable to perform any past relevant work. AR 20. At step five, the ALJ found Plaintiff had the ability to perform jobs that exist in significant numbers in the national economy, specifically as a deflective operator/bottle inspector, bottle packer, and folder. AR 21. The ALJ concluded that Plaintiff was not disabled under the Act from December 19, 2019, the application date, through April 19, 2022, the date of the ALJ's decision. AR 22.

## DISCUSSION

Plaintiff argues that the ALJ erred by (1) failing adequately to address whether Plaintiff's impairments met or equaled Listings 3.02(C)(3) and 14.07(A) or (C), (2) improperly rejecting his symptom testimony, (3) improperly rejecting the testimony of nine lay witnesses, (4) finding the medical opinions of state agency consultant Michael Henderson, D.O. only partially persuasive, and (5) failing to identify jobs at step five consistent with the RFC. The Court addresses each argument in turn.

**A.  Listings 3.02(C)(3) & 14.07 (A) or (C)**

    **1.  Listing 3.02(C)(3)**

Plaintiff contends that the ALJ erred because he failed properly to assess whether Plaintiff's sleep apnea met or equaled Listing 3.02(C)(3) at step three. Plaintiff bears the burden of proof at step three. *See Bustamante*, 262 F.3d at 953 (explaining that the claimant bears the burden at steps one through four); *Burch*, 400 F.3d at 683 (explaining that the claimant bears the burden to prove that he or she meets or equals a listing). A mere diagnosis does not suffice to establish disability. *Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985). "'[An impairment] must also have the *findings* shown in the Listing of that impairment.'" *Id.* (quoting 20 CFR § 404.1525(d) (emphasis added in *Key*). To meet a listing, an impairment "must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). "To *equal* a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment[.]" *Tackett*, 180 F.3d at 1099 (emphasis in original) (quoting 20 C.R.R. § 404.1526(a)); *see also Sullivan*, 493 U.S. at 531 (to establish equivalency, a claimant "must present medical findings equal in severity to *all* the criteria" for the listing (emphasis in original)).

Listing 3.02(C)(3), concerning chronic respiratory disorders, refers to chronic impairment of gas exchange demonstrated by oxygen saturation levels less than or equal to a value based on the altitude at the test site, measured by pulse oximetry either at rest or during or after a 6-minute walk test. 20 C.F.R. Part 404, Subpart P, App'x 1, § 3.02(C)(3). The introduction to the listing explains the various requirements for the pulse oximetry testing, including that the claimant must be medically stable at the time of the test; the measurements must be recorded on room air without oxygen supplementation; the pulse oximetry measurement must be stable over a 15-

second interval; and the report must include the claimant's name, date of test, the altitude or

location of the test, and a graphical printout of the SpO2 value and pulse wave. 20 C.F.R.

Part 404, Subpart P, App'x 1, § 3.00(H).

Plaintiff argues that the ALJ erred in relying on the results of a sleep study performed in

December 2018 as showing that Plaintiff did not have listing-level oxygen saturation levels,

specifically an SpO2 value under 87 percent, to conclude that Plaintiff did not meet the

requirement of Listing 3.02(C)(3). Plaintiff asserts that the ALJ misread the values of the sleep

study to conclude that Plaintiff had an "SpO2 of less than 89 percent for over four hours,"

AR 16, when in fact, Plaintiff's his SpO2 levels dipped below the 87 percent threshold for much

of the study. The Commissioner concedes that the ALJ misread the data, but argues that Plaintiff

nonetheless fails to meet his burden at step three. The Commissioner asserts that the record does

not show the requisite level of impairment to meet Listing 3.02(C) because the sleep study

occurred before the relevant period and the oxygen saturation test must happen while a claimant

is awake to qualify for the relevant listing. Plaintiff responds that these reasons were not asserted

by the ALJ and are impermissible *post hoc* analyses by the Commissioner.

It is Plaintiff's burden to show harmful error at step three. Thus, it is not *post hoc*

rationalization for the Commissioner to explain why the ALJ's error is not harmful because the

record otherwise does not support Plaintiff's contention that he meets the listing. *See, e.g.*,

*Patricia C. v. Saul*, 2020 WL 4596757, at *17 (S.D. Cal. Aug. 11, 2020), *report and*

*recommendation adopted sub nom. Craig v. Saul*, 2020 WL 5423887 (S.D. Cal. Sept. 10, 2020)

("Further, even though the ALJ in this case did not specifically find that Plaintiff did not meet

Listing 1.04(A) for 12 months with respect to her cervical spine, the Commissioner's brief

argument and this Court's finding that Plaintiff has not presented evidence of meeting all of

Listing 1.04(A)'s requirements for at least 12 months is not post hoc rationalization.");

*Kellenbach v. Berryhill*, 2017 WL 3454573, at *3 (W.D. Wash. Aug. 11, 2017) (rejecting the plaintiff's argument that the Commissioner engaged in *post hoc* rationalization by asserting new arguments as to why the plaintiff did not meet a listing because "to show a harmful step-three error" the plaintiff "must show that he indeed satisfies" the listing).

The Court agrees with the Commissioner that the ALJ's error in misreading the SpO2 values to conclude that Plaintiff did not meet Listing 3.02(C)(3) was harmless. The ALJ's error was harmless, first, because Plaintiff did not present evidence that his sleep apnea met or equaled Listing 3.02(C)(3) for at least twelve continuous months during the relevant period. To meet his burden at step three, Plaintiff must provide evidence that shows he met "*all* of the specified medical criteria" for at least 12 months during the relevant period. *Sullivan*, 493 U.S. at 530 (emphasis in original); s*ee also Kellenbach*, 2017 WL 3454573, at *3 (concluding that "many of the findings cited by Plaintiff as evidence that supports his step-three argument do not show that his symptoms lasted 12 months," that the plaintiff therefore "has not shown that [the symptoms] persisted for the requisite 12 months," and thus he did not meet his burden to show that he met the listing); *Felton v. Colvin*, 2016 WL 6803680, at *3 (E.D. Cal. Nov. 17, 2016) ("In particular, the medical evidence fails to show that plaintiff suffered from nerve root compression, the spinal impairment on which Listing 1.04A is based, for at least a 12 month period during the relevant period."). Plaintiff cites only the results of the December 2018 sleep study, which is insufficient.

Plaintiff alleges a disability onset date of December 31, 2019. As the ALJ noted, in January 2019 Plaintiff's doctor noted that he should start feeling better after he begins using a continuous positive airway pressure (CPAP) machine. AR 423. In February 2021, Plaintiff had a comprehensive examination from an independent medical examiner. AR 478-80. During that examination he reported that he "felt a lot better after starting" the CPAP machine. AR 478. Plaintiff argues that the Commissioner does not provide evidence that the CPAP resolved

Plaintiff's purported listing-level hypoxemia from his 2018 sleep study, but it is Plaintiff's burden to provide evidence showing that he had a listing-level impairment for 12 months during the relevant period. Simply citing the 2018 study fails to meet that burden, particularly with the evidence in the record that shortly after that sleep study, Plaintiff obtained a CPAP and felt "a lot better."

The ALJ's error was also harmless because Plaintiff's sleep apnea is not even the type of breathing-related disorder that falls under Listing 3.00. *Allen C. v. Kijakazi*, 2023 WL 5916904, at *5 (E.D. Wash. Sept. 11, 2023) ("While Plaintiff contends his sleep apnea should be considered under the respiratory listings, there is no legal support for this contention."). Instead, Listing 3.00 specifically notes that sleep-related breathing disorders, such as sleep apnea, are evaluated based on the complications that result from prolonged transient episodes of interrupted breathing during sleep, such as hypertension, heart failure, or disturbance in mood and cognition. 20 C.F.R. Part 404, Subpart P, App'x 1, § 3.00(P); *see also Allen C.*, 2023 WL 5916904, at *5. Plaintiff cites this provision and notes that it references chronic pulmonary hypertension as being evaluated under Listing 3.09. Plaintiff, however, does not argue that he has chronic pulmonary hypertension, or any other ongoing complication from sleep apnea that impacts other body systems.

Finally, the ALJ's error is harmless because Plaintiff's cited evidence, the 2018 sleep study, is of the wrong variety to qualify under Listing 3.02(C)(3). As the Commissioner rightly points out, measurements required to meet Listing 3.02(C)(3) must be taken while awake. To qualify, a claimant must submit evidence of proper SpO2 levels either "at rest" or during or after a six-minute walk test. Listing 3.00(H). The prior instantiation of Listing 3.02(C)(3) defined "at rest" as "while breathing room air, *awake,* and sitting or standing." *See, e.g.*, DI 34123.009 Respiratory Listings from 04/13/06 to 10/06/16, SSA POMS DI 34123.009 (emphasis added).

While the current version of Listing 3.00 does not define "at rest," its structure (which maintains an entirely separate mode of analysis for "sleep-related breathing disorders") suggests that the analysis under the remainder of Listing 3.00 applies only to symptoms the claimant experiences while awake.

For all these reasons, the record from the December 2018 sleep study is insufficient to support that Plaintiff's condition met or equaled Listing 3.02(C)(3). Nor has Plaintiff cited any other evidence in the record showing a listing-level breathing disorder. Therefore, the ALJ's error in analyzing the SpO2 levels in the medical record was harmless.

### 2. Listing 14.07

Listing 14.00 generally covers immune system disorders. Plaintiff contends that his impairments meet or medically equal Listing 14.07(A) or (C), immune deficiency disorders (other than HIV infection), and that the ALJ failed to consider the issue at step three.

Listing 14.07 requires:

> Immune deficiency disorders, excluding HIV infection. As described in 14.00E. With:
>
> A. One or more of the following infections. The infection(s) must either be resistant to treatment or require hospitalization or intravenous treatment three or more times in a 12-month period.
>
> * * *
>
> 6. Sinusitis documented by appropriate medically acceptable imaging.
>
> * * *
>
> OR
>
> C. Repeated manifestations of an immune deficiency disorder, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
>
> 1. Limitation of activities of daily living.

2. Limitation in maintaining social function.

3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. Part 404, Subpart P, App'x 1, § 14.07(A) & (C). In turn, Listing 14.00(E) categorizes "immune deficiency disorders, excluding HIV infection" as either "primary," or "acquired". Listing 14.00(E). The listing gives several examples of immune deficiency disorders that would qualify under either category. *Id.*

Plaintiff points to no "immune deficiency disorder" that he had. Plaintiff's counsel argued at the hearing and before this Court that in December 2021 Plaintiff was diagnosed by Dr. Bradley Tymchuk, M.D., with nonalcoholic fatty liver disease (NFLD) (recently renamed as metabolic (dysfunction)-associated fatty liver disease). Plaintiff testified at the hearing that his doctor (Dr. Tymchuk) told him that "having a malfunctioning liver causes all kinds of immune problems." AR 48. The medical records, however, do not show that Dr. Tymchuk had concerns regarding Plaintiff's immune system. Dr. Tymchuk's chart note from that visit does not mention immunity or any potential complications or effects on Plaintiff's immune system from NFLD. AR 515-24. Dr. Tymchuk's treatment plan for NFLD included improving Plaintiff's diet and increasing exercise. AR 515. Dr. Tymchuk also indicated that Plaintiff did not have any emergency conditions. AR 524. Nor generally are the symptoms of NFLD associated with compromised immunity. *See Nonalcoholic Fatty Liver Disease*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/nonalcoholic-fatty-liver-disease/symptoms-causes/syc-20354567 (last visited April 15, 2024). At the hearing, in discussing Plaintiff's alleged immune issues and December 2021 NFLD diagnosis, the ALJ went so far as to ask Plaintiff's counsel whether Plaintiff had a *diagnosed immune deficiency disorder*, and Plaintiff's

counsel shared that the immune deficiency diagnosis was his "guess" based on his "own reading up on the condition." AR 36-37.

Plaintiff also argues that the ALJ should have considered whether Plaintiff had some underlying immune condition because Dr. Henderson expressed concern about the possibility and there was evidence in the medical record that could support that Plaintiff might have had such a condition. Plaintiff cites the regulation that disorders must be proven by objective medical evidence and that a claimant's assertion of symptoms or a diagnosis itself will not suffice. 20 C.F.R. § 416.921. The fact that a diagnosis, without more, is insufficient to *prove* a disorder, however, does not mean that without *any* diagnosis in the record, the ALJ is required to analyze what often is hundreds or even a thousand or more pages of medical records and diagnose whether a claimant might have some heretofore undiagnosed condition that might meet a listing. Plaintiff offers no diagnosis of an *immune deficiency* disorder or equivalency. Where a claimant presents no evidence of equivalence at step three, the ALJ has no duty to consider whether listing medical equivalency was met. *See Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001). Thus, Plaintiff failed to establish that he had an immune deficiency disorder as defined by Listing 14.00(E), so he did not trigger the ALJ's duty to review whether his limitations met or equaled Listing 14.07. Additionally, as the ALJ noted, Dr. Henderson did not have a clear diagnosis for how the "relatively minimal exertion leads to what sounds like an immunodeficiency." AR 19 (quoting AR 480).

At best, Plaintiff has identified the attendant additional symptoms required by 14.07(A) and 14.07(C), but not the underlying immune deficiency disorder described in 14.00(E). Because he has not identified any immune deficiency disorder in the record, and counsel denied the existence of a diagnosis of such a disease at the hearing, the ALJ was not obligated to investigate

whether Plaintiff met the follow-on criteria in 14.07(A)(6) and 14.07(C). Therefore, the ALJ did not err in failing to address either of these criteria at step three.

## B. Plaintiff's Subjective Symptom Testimony

### 1. Legal Standards

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25, 2017).[2] There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not

---

[2] Effective March 28, 2016, Social Security Ruling (SSR) 96-7p was superseded by SSR 16-3p, which eliminates the term "credibility" from the agency's sub-regulatory policy. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14166 (Mar. 16, 2016). Because, however, case law references the term "credibility," it may be used in this Opinion and Order.

credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be

"sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily

discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing

*Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's

character," and requires the ALJ to consider all of the evidence in an individual's record when

evaluating the intensity and persistence of symptoms. SSR 16-3p, available at 2016

WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case

record, including the objective medical evidence; an individual's statements about the intensity,

persistence, and limiting effects of symptoms; statements and other information provided by

medical sources and other persons; and any other relevant evidence in the individual's case

record." *Id*. at *4. The Commissioner further recommends assessing: (1) the claimant's

statements made to the Commissioner, medical providers, and others regarding the claimant's

location, frequency and duration of symptoms, the impact of the symptoms on daily living

activities, factors that precipitate and aggravate symptoms, medications and treatments used, and

other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical

reports regarding the claimant's history, treatment, responses to treatment, prior work record,

efforts to work, daily activities, and other information concerning the intensity, persistence, and

limiting effects of an individual's symptoms; and (3) non-medical source statements, considering

how consistent those statements are with the claimant's statements about his or her symptoms

and other evidence in the file. *See id*. at *6-7.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall

even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See*

*Batson*, 359 F.3d at 1197. The ALJ may not, however, discount testimony "solely because" the

claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

Relevant here, Plaintiff testified at the hearing that he has persistent and chronic infections that can last months, the stress of having a regular routine can cause him to become rundown, and he can spend 12 hours per day in bed. AR 45-47. He also noted that, on some days, he may sleep eight hours, be up 20 minutes, and then sleep another four-to-five hours. AR 54. Plaintiff emphasized the limitations he suffers from fatigue and respiratory infections in a written function report. *See* AR 276-83. In that report, Plaintiff shared that his fatigue renders him unable to concentrate or perform simple tasks. Plaintiff specifically described that he can pay attention for "about 20 minutes" at maximum, and that fatigue and joint inflammation make some daily activities difficult. AR 280-81.

### 2.  Analysis

The ALJ first offered the boiler plate statement that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR 18. The ALJ then specifically stated that the objective medical evidence did not support Plaintiff's claimed limitations. Although the ALJ did not specifically enumerate other reasons for discounting Plaintiff's testimony, the ALJ's ensuing discussion included Plaintiff's activities of daily living and a history of improvement with treatment. The Court accepts these as additional reasons provided by the ALJ. "Even when an agency explains its decision with less than ideal clarity, [the reviewing court] must uphold it if the agency's path

may reasonably be discerned." *Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) (quotation marks omitted).[3]

Any of the ALJ's three reasons may have been sufficient to discount Plaintiff's testimony, but because they were not stated with enough specificity, the Court remands to the ALJ for further consideration on the issue. When a plaintiff challenges the ALJ's decision to discount his symptom testimony, the Court analyzes whether the ALJ had "specific, clear and convincing reasons"[4] for doing so.[5] *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014). The

---

[3] Plaintiff argues that the ALJ did not raise Plaintiff's daily activities or improvement with treatment when discounting his testimony and that these reasons were impermissible *post hoc* rationalizations introduced for the first time by the Commissioner before this Court. Not so. Although the ALJ's decision is not a model of clarity on either topic, the ALJ in fact addressed the extent to which both Plaintiff's activities and improvement with treatment conflicted with his testimony. For daily activities, in assessing Plaintiff's sister's third-party report, the ALJ noted her testimony was no more persuasive than Plaintiff's testimony, and summarized that Plaintiff "reported that he could manage many activities of daily living, keep his home clean, perform personal hygiene, do laundry, shop for groceries, and prepare meals," and concluded that such evidence "supports fewer limitations than what [he and his sister] allege." AR 20. For improvement with treatment, the ALJ discounted Plaintiff's testimony "because the objective evidence does not fully support the level of limitation claimed," and cited several examples of how Plaintiff's sinus conditions improved with treatment. *See, e.g.,* AR 18-19 (noting how prescriptions of "nasal flushing with budesonide and tobramycin for a month" "worked well for him"). As indicated above, however, the ALJ did not sufficiently analyze what testimony, if any, these aspects of the record undermine, so the Court remands on this basis.

[4] The ALJ found that Plaintiff had medical impairments that could reasonably be expected to produce his pain or other symptoms and the ALJ did not make any finding of malingering, and thus the ALJ was required to provide specific, clear and convincing reasons to discount Plaintiff's testimony.

[5] In his opening brief, Plaintiff argued the ALJ failed to "provide a legally sufficient basis to discount [his] testimony," and specifically challenged the ALJ's reliance on objective medical evidence. ECF 11 at 9-10. Plaintiff did not explicitly argue the ALJ erred for lack of specificity until his reply brief. ECF 16 at 9. The Commissioner did not move to strike this argument or move for leave to file a surresponse.

Typically, arguments not raised in a party's opening brief are waived. *See United States v. Kama*, 394 F.3d 1236, 1238 (9th Cir. 2005) ("Generally, an issue is waived when the appellant does not specifically and distinctly argue the issue in his or her opening brief."). That is not the case here, however. As noted, when a plaintiff whose impairments can reasonably be expected to

Ninth Circuit has emphasized that specificity is important: in addition to being clear and convincing, an ALJ's reasons "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Bunnell*, 947 F.2d at 345 (quotation marks omitted). In this context, that means an ALJ must "identify the testimony she found not credible," and "*link* that testimony to the particular parts of the record supporting her non-credibility determination." *Brown-Hunter*, 806 F.3d at 494 (emphasis added). "[A]n ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Id.* at 489; *see also Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) (stating that "provid[ing] a relatively detailed overview of [a claimant's] medical history . . . 'is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible.'" (quoting *Brown-Hunter*, 806 F.3d at 494) (emphasis in *Brown-Hunter*)); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) (rejecting the argument that because the ALJ "set out his RFC and summarized the evidence supporting his determination" the court could infer "that the ALJ rejected [the claimant's] testimony to the extent it conflicted with that medical evidence").

---

produce his pain or other symptoms and who has not been found to be malingering challenges the ALJ's decision to discount symptom testimony, the Ninth Circuit instructs district courts to analyze whether the ALJ's reasons were "*specific*, clear and convincing." *See Burrell*, 775 F.3d at 1136 (emphasis added). Baked into the Ninth Circuit's test is a requirement that the ALJ's decision be clear enough for a reviewing court to parse. *See, e.g.*, *Bunnell*, 947 F.2d at 345-46 (explaining that the ALJ's reasons must be sufficiently specific to enable court review). Thus, this is not a separate argument a plaintiff must raise, but simply part of the analysis of the sufficiency of the ALJ's reasons. *Cf. Brown-Hunter*, 806 F.3d at 494 (explaining the specificity requirement for appellate review and its connection to the *reasons* given by the ALJ); *Lambert*, 980 F.3d at 1277-78 (same). The Court therefore analyzes whether the ALJ stated his rationale with sufficient specificity even though Plaintiff did not raise the issue until his reply.

When relying on Plaintiff's improvement with treatment, daily activities, and conflicting medical records to discount his testimony, the ALJ failed to meaningfully connect the dots. The written decision first ably recounts much of Plaintiff's testimony and then recites the medical records. But the ALJ summarily concludes that medical records and Plaintiff's daily activities undermine "the level of limitation claimed" without specifying what "limitation" the opinion is discounting. AR 18-20. This does not identify which of Plaintiff's statements or what testimony is supposedly undermined by the record, or what parts of the record undermine it. *See Lambert*, 980 F.3d at 1277 (stating that a court "cannot review whether the ALJ provided specific, clear, and convincing reasons for rejecting [a clamaint's] pain testimony where . . . the ALJ never identified *which* testimony she found not credible, and never explained *which* evidence contradicted that testimony" (emphasis in original)). Ninth Circuit "decisions make clear that we may not take a general finding—an unspecified conflict between Claimant's testimony and her reports to doctors—and comb the administrative record to find specific conflicts." *Brown-Hunter*, 806 F.3d at 494 (quotation marks omitted).

Several of Plaintiff's allegations of pain and fatigue appear to conflict with the ALJ's cited medical records or daily activities, such as his statement that some days he needs to spend 12 hours per day in bed, AR 45-47, or that other days, he may sleep eight hours, be up 20 minutes, and then sleep another four-to-five hours, AR 54, but the ALJ does not affirmatively say so. That leaves this reviewing court to surmise which "testimony she found not credible" and what "particular parts of the record supporting her non-credibility determination." *Brown-Hunter*, 806 F.3d at 494. Failure to provide such clear analysis is error, and the Court therefore finds that the ALJ failed to give a sufficiently specific, clear and convincing reason for discounting Plaintiff's symptom testimony. On remand, the ALJ  must be more explicit about what testimony is being discounted and why.

### C.  Lay Witness Testimony

Plaintiff also argues the ALJ failed to provide germane reasons to discount the testimony of his sister and eight other lay witnesses. Any person with relevant knowledge who gives testimony about a claimant's impairments can qualify as a lay witness. *See* SSR 06-03p, 2006 WL 2329939, at *2. Lay witness testimony about a claimant's symptoms is competent evidence that the ALJ must consider unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis*, 236 F.3d at 511. The ALJ's reasons for rejecting lay-witness testimony must be specific and germane. *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009). In the Ninth Circuit, inconsistency with the objective medical evidence is a germane reason for rejecting lay witness testimony. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). On the other hand, lay witness testimony unsupported or uncorroborated by the medical record is not a germane reason to discount lay witness testimony. *Bruce*, 557 F.3d at 1116.

An ALJ errs by "failing to explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Molina*, 674 F.3d at 1115 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). When an ALJ ignores uncontradicted lay witness testimony highly probative of the claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006).

On May 2, 2020, Plaintiff's sister completed a written function report about Plaintiff. AR 298-307. The ALJ disregarded Plaintiff's sister's statements because they were inconsistent with several of Plaintiff's reported daily activities. AR 20. In reaching this conclusion, the ALJ noted that Plaintiff's sister's statements "mirror those of the claimant," and compared them to

Plaintiff's stated ability to do such activities as "keep his home clean, perform personal hygiene, do laundry, shop for groceries, and prepare meals." *Id.* The ALJ did not specifically address any particular statement by Plaintiff's sister. Notably, Plaintiff's sister highlighted Plaintiff's fatigue and weakness despite his ability to do minimal chores, noting that simple tasks are tiring and that things he used to do are now exhausting and that although he can make simple meals like sandwiches, anything more complex is too tiring. AR 301, 307. Because Plaintiff's statements about his minimal ability to do basic chores does not meaningfully conflict with Plaintiff's sister's statements, the Court finds that this is not a germane reason to discount her testimony. The ALJ thus erred in considering Plaintiff's sister's testimony.

The ALJ did not consider at all the testimony of the other eight lay witnesses, and it was error for him to fail to do so. The Commissioner argues that under new regulations governing the evaluation of *medical* evidence, an ALJ need not provide any reason for rejecting *lay* witness statements. This Court repeatedly has rejected this argument and still requires ALJs to provide a germane reason to reject lay witness testimony. *See, e.g., Richard M. v. O'Malley*, 2024 WL 1554170, at \*7-8 (April 10, 2024); *Shayla H. v. O'Malley*, 2024 WL 1155392, at \*10 (D. Or. Mar. 18, 2024); *Tracy Q. v. Kijakazi*, 2024 WL 706963, at \*7-8 (D. Or. Feb. 21, 2024). The ALJ did not provide any reason, let alone a germane one, for disregarding the other eight witnesses' testimony, and therefore erred. The Commissioner argues that the error was harmless because Plaintiff's and his sister's testimony mirrored that of the other lay witnesses, and the ALJ offered sufficient justifications for discounting Plaintiff's and his sister's statements. As discussed above, however, the ALJ failed to supply legally sufficient reasons for rejecting Plaintiff's subjective complaints, and the Court has found error in the ALJ's assessment of Plaintiff's sister's testimony, so those rationales cannot cover for his failure to address the other lay witness testimony.

### D.  Medical Opinion Evidence

For disability claims filed on or after March 27, 2017, the ALJ no longer "weighs"

medical opinions but instead determines which are most "persuasive." 20 C.F.R. § 404.1520c(a).

The 2017 regulations eliminated the hierarchy of medical opinions and state that the agency does

not defer to any particular medical opinions, even those from treating sources. *Id.*; see also

*Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("The revised social security regulations are

clearly irreconcilable with our caselaw according special deference to the opinions of treating

and examining physicians on account of their relationship with the claimant."). Under the 2017

regulations, the ALJ primarily considers the "supportability" and "consistency" of the opinions

in determining whether an opinion is persuasive. 20 C.F.R. § 404.1520c(c). Supportability is

determined by whether the medical source presents explanations and objective medical evidence

to support their opinions. *Id.* § 404.1520c(c)(1). Consistency is determined by how consistent the

opinion is with evidence from other medical and nonmedical sources. *Id.* § 404.1520c(c)(2).

An ALJ may also consider a medical source's relationship with the claimant by looking

at factors such as the length, purpose, or extent of the treatment relationship, the frequency of the

claimant's examinations, and whether there is an examining relationship. *Id.* § 404.1520c(c)(3).

An ALJ is not, however, required to explain how she considered those secondary medical factors

unless she finds that two or more medical opinions about the same issue are equally well-

supported and consistent with the record but not identical. *Id.* § 404.1520c(b)(2-3).

The regulations require ALJs to "articulate . . . how persuasive [they] find all of the

medical opinions" and "explain how [they] considered the supportability and consistency

factors." *Id.* § 404.1520c(b). The court must, moreover, continue to consider whether the ALJ's

analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *Woods*, 32 F.4th at 792

("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's

opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.")

Plaintiff argues that the ALJ reversibly erred by failing to "fully adopt" Dr. Michael Henderson's finding that Plaintiff was bedbound around 50 percent of the time. Relevant to Plaintiff's arguments, Dr. Henderson opined that Plaintiff's back pain was exacerbated by his obesity and would "likely limit him to standing and walking to 10 minutes or less at a time." AR 480. Dr. Henderson also noted that Plaintiff's respiratory tract infections "[a]ccording to his history" were his "most impairing condition," and found that the infections "largely [kept] him bedbound around 50% or more of the time." AR 479. The ALJ found Dr. Henderson's opinions "not . . . fully persuasive" because they relied on Plaintiff's subjective testimony, Dr. Henderson's own objective findings did not support his restrictions, and Plaintiff had not yet had the benefit of the treatment by Dr. Richard Flaiz, MD. AR 19.

Regarding supportability, the ALJ adequately discussed the strength of the evidence underlying Dr. Henderson's opinion when finding it unpersuasive. The supportability factor requires an ALJ to consider the persuasiveness of a medical opinion based on how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion." 20 C.F.R. § 404.1520c(c)(1). The ALJ reasonably found the opinions lacked supportability because Dr. Henderson's conclusions were based almost entirely on Plaintiff's subjective reports, and Dr. Henderson's own "objective findings [were] unsupportive of such a restrictive limitation." AR 19. For instance, the ALJ considered that Dr. Henderson's objective findings about Plaintiff were largely normal, including: (1) normal (5/5) strength; (2) no evidence of nerve root irritation when he raised his legs (negative straight leg raise test); (3) no tenderness to spinal palpation; (4) Plaintiff could squat about halfway down; (5) no significant atrophy, deformity, or erythema in his lower extremities; (6) intact

sensation to light touch; (7) no significant difficulties transferring between sitting and standing; (8) Plaintiff could walk on his toes and heels; and (9) Plaintiff had normal tandem walking. *Id.* (citing AR 479). The ALJ thus reasonably concluded that Dr. Henderson's finding that Plaintiff would be bedbound for up to half the day was based on Plaintiff's allegations alone. *Id.* "If a treating provider's opinions are based to a large extent on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (quotation marks omitted). The ALJ adequately considered the supportability of Dr. Henderson's opinion by examining the bases for his conclusions, and discounting them for their inconsistency and lack of support.

The ALJ also adequately addressed the consistency of Dr. Henderson's opinion when finding it unpersuasive. The consistency factor requires the ALJ to assess medical opinions' alignment with "evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2). The ALJ reasoned that the opinion Plaintiff would be bedbound about 50 percent of the time was inconsistent with Plaintiff's successful treatment of his symptoms with other medical professionals. Specifically, the ALJ contrasted Dr. Henderson's conclusion that Plaintiff's respiratory infections were "the most impairing condition" and that Plaintiff was bedbound 50 percent or more of the time with Plaintiff's subsequent, successful treatment of those conditions with Dr. Flaiz in February 2021. AR 19. Dr. Flaiz prescribed nasal flushing with budesonide and tobramycin for a month, and Plaintiff reported that he felt that his sinuses were healthy again. AR 18-19, 554. Dr. Flaiz's successful treatment undermines Dr. Henderson's opinion that Plaintiff's sinus issues would render him bedridden almost half the day, and it was reasonable for the ALJ to rely on that successful treatment in discounting Dr. Henderson's opinion. Ultimately, the Court finds that the ALJ sufficiently address the

consistency and supportability factors, and supported the decision to discount Dr. Henderson's opinion with substantial evidence.

## E. Step Five

Plaintiff also argues the ALJ erred at step five by failing to identify jobs that align with the RFC's limitation on exposure to moving mechanical parts. At step five, the ALJ "relies primarily on the *Dictionary of Occupational Titles* [DOT] for information about the requirements of work in the national economy." *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007) (quotation marks omitted). The DOT is the rebuttable presumptive authority on job classifications. *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995). The ALJ is "required to investigate and resolve any apparent conflict between the VE's [vocational expert] testimony and the DOT." *Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017). A conflict is apparent only if the challenged vocational requirement is "essential, integral, or expected" for the job. *Gutierrez v. Colvin*, 844 F.3d 804, 808 (9th Cir. 2016). Here, the ALJ relied on VE testimony that Plaintiff could perform the jobs of deflective operator/bottle inspector because neither involved moving mechanical parts. *See* AR 61; DOT No. 529.687-058, 1991 WL 674749 (deflective operator/bottle inspector); DOT No. 920.685-026, 1991 WL 687929 (bottle packer).

Plaintiff argues that the DOT descriptions for both jobs include "moving mechanical parts," specifically conveyor belts. The Commissioner focuses on the DOT's specific identified functional requirements, which both state "Moving Mech. Parts: Not Present – Activity or condition does not exist." The ALJ confirmed with the VE that he would inform the ALJ if the VE gave any testimony that conflicted with the DOT. AR 57. The VE's jobs do not conflict with the DOT considering the specific functional requirements, but do have an apparent conflict considering the job description. The ALJ does not address the apparent conflict with the DOT's job description and its internal inconsistency with the specific functional requirements. Nor does

the Commissioner provide any authority that the Court can disregard the job description and only consider the functional requirements. Because the ALJ failed to resolve apparent conflicts between the VE's testimony regarding all of the three jobs[6] identified and the definitions contained in the DOT, this issue will be remanded to allow the Commissioner to make further vocational findings at step five.

## F. Remedy

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210. Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler.*, 775 F.3d at 1099-100. The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the

---

[6] The Commissioner does not dispute that the folder job requires exposure to extreme temperatures, which conflicts with the RFC's requirement that Plaintiff be limited "from concentrated exposure to extreme temperatures." AR 17. On remand, the ALJ should resolve this conflict as well.

district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

The ALJ committed harmful error by failing to provide specific, clear, and convincing reasons to reject Plaintiff's subjective symptom testimony and failing to provide a germane reason to discount the lay witness testimony. After reviewing the record, however, conflicts and ambiguities remain between Plaintiff's and the lay witness testimony and the medical opinions regarding the severity and limiting effects of Plaintiff's physical impairments. The Court therefore remands for further proceedings so that the ALJ can adequately evaluate Plaintiff's and the lay witnesses' testimony, reformulate the RFC if necessary, and seek further VE testimony at step five, if necessary.

## CONCLUSION

The Court REVERSES the Commissioner's decision that Plaintiff was not disabled and REMANDS for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 16th day of April, 2024.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge